GEORGE HANSON ET AL., APPELLEES, V. AETNA LIFE INSURANCE COMPANY, APPELLANT.*

FILED FEBRUARY 21, 1907.    No. 14,673.

Principal and Agent.  A principal is bound by only such conduct and representations of his agent as occur in the course of his business by the latter, and are within the agent's real or ostensible authority.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE.  *Reversed.*

*A. W. Lane* and *R. D. Stearns,* for appellant.

*Harvey & Harvey, contra.*

AMES, C.

On the 8th day of March, 1904, the defendant issued a policy of insurance, dated May 20, 1904, for the sum of $1,000 upon the life of one Albert Hanson for the benefit of the plaintiffs in this action, who are his parents.  At the date of the issuance of the policy, the company, in consideration of a cash payment of $1.94, executed to the insured a written stipulation to the effect that such payment should put the policy in force and continue it so, until its date, to wit, May 20, 1904, and, if on such date, and at the end of every three months thereafter, the insured should make cash payments of premiums of $21 each, the policy should continue in force, but that in case of default of any such payment it should lapse and deter-

mine.  At the time of the delivery of the policy Hanson gave his note, payable April 15, 1904, for the amount of the first premium maturing May 20.  On November 24, 1904, the insured died, delinquent of the premium due on the 20th of that month, about which fact there is no dispute, but in ignorance of it the defendant, through its local agent at Lincoln, Nebraska, sent through the mails to the late address of the insured a written notice designed to call his attention to the delinquency, and saying, in substance, that, if he should make the payment due November 20 on or before December 20, then instant, the policy would be continued in force, according to a custom of the company, otherwise not.  This notice came into the hands of the plaintiffs, and on the 5th day of the month one of them called at the office of the agent and paid the premium, and obtained a receipt therefor.  At the same time the premium note above mentioned was delivered to them upon the presumption and belief that it had been paid.  Afterwards the company ascertained that, according to the records and recollection of the company and its agents having to do with such matters, neither the note nor the first or second premiums accruing under said policy had been paid, and there is no direct evidence that either of them had been.  So soon as the local agent discovered his mistake, he tendered repayment of the money and demanded a return of his receipt.  This is an action upon the policy, and the defense is that it lapsed and determined on the 20th day of May for default of payment of the first premium stipulated therein, and has never been revived or renewed or the default waived.

The evidence in behalf of the defendant in support of its defense is complete and conclusive and without contradiction, except the payment above mentioned, and except that one of the plaintiff's witnesses, a brother of the deceased, testified on cross-examination that he had heard the deceased tell his father that the premiums had been paid; and one Noots, a witness for the plaintiffs, was permitted to testify, over the objection of the defendant,

that on or about August 15 or 20 he had loaned to the deceased $9.50; but an attempt to prove by this witness that deceased had told him that he borrowed this money to pay insurance premiums was defeated by the court, and a statement by the witness to that effect was stricken out.

It does not appear that either party requested instructions, but the court submitted the case to the jury under a series of instructions of its own, among which was the following, to which the defendant excepted: "As to whether the premiums were paid, the jury are instructed that the receipt issued by the defendant's agent for the payment of the third premium, due under the terms of the policy November 20, 1904, would be *prima facie* evidence that all of the prior payments had been made to the defendant. On the other hand, said receipt only raises a presumption that the recitals contained therein are true and that the payment receipted for was actually made, and it is for you to say from all the evidence, including the circumstances surrounding said payment and the conversation which you find from the evidence took place at that time, also the circumstances of the giving of the note payable to the solicitor of the insurance for the first premium, and all other facts and circumstances shown in evidence bearing on that point, whether such prior premiums were paid." We think this instruction was erroneous. At the time this third premium was paid the plaintiffs knew that their son was dead, and knew that at least that premium was delinquent and that the policy contract was for that reason, if no other, at an end, and they knew also, or must have been presumed to have known, that the local agent had no authority to bind his principal by a contract with the dead, or to modify or affect the rights of the parties that had become fixed by the termination of the contract as well by the death of the insured as by his default. In other words, they knew that with respect to that policy the agent had ceased to be competent to bind his principal either by the

acceptance of money or by recitals in his receipt. The evidence is clear and undisputed that the agent received the money under a mistake of facts of which the plaintiffs were not ignorant, and nothing that he said or did while laboring under the mistake, and in excess of the scope of his powers, can be treated as an admission by his principal or as raising any presumption against the latter. The rule of law is elementary that a principal is bound by only such conduct and representations of his agent as occur in the course of his business by the latter, and are within his real or ostensible authority, or which the opposite party believes, and has reason to believe, to be so. Any other doctrine would render the employment of agents so dangerous an expedient as to be practically impossible. If the money had been paid by the insured and received and retained by the agent in the lifetime of the former, an entirely different issue would have been raised, but one upon which it is not now incumbent upon the court to decide.

The verdict and judgment were for the plaintiffs. We recommend that they be reversed and a new trial granted.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.

The following opinion on rehearing was filed July 12, 1907. *Former judgment of reversal vacated and judgment of district court affirmed:*

1. **Insurance: ACTION: EVIDENCE.** In an action on a life insurance policy, a witness on behalf of the plaintiff testified on cross-examination to having heard the insured state, shortly before his death, that the premiums on the policy had all been paid. This testimony was permitted, without objection, to remain in the record. *Held*, To be some evidence of payment.

2. **New Trial: NEWLY DISCOVERED EVIDENCE.** In an action on a life

insurance policy issued by what is commonly called an old line life insurance company, it is not error to overrule a motion for a new trial on the ground of newly discovered evidence, where the claim of newly discovered evidence is grounded on statements alleged to have been made by the insured that he had not paid the premiums on the policy upon which the action was founded.

3. ———: EVIDENCE. The possession by the defendant of an uncanceled receipt for a premium maturing before the death of the insured is not of itself sufficiently controlling to justify the trial court in setting aside the verdict of a jury upon motion for a new trial.

JACKSON, C.

The plaintiffs had judgment for the amount of an insurance policy covering the life of their son. The application for the insurance was made February 18, 1904, and, following the practice of the defendant company where short term insurance was desired, pending the issuance and date of the policy, the applicant paid the premium demanded for that purpose, and agreed to pay the sum of $21 on the date of the policy, and a like sum each three months thereafter. The policy was dated May 20, 1904, and provided: "This policy shall not take effect until the first premium hereon shall have been actually paid during the lifetime and good health of the insured and within 60 days from March 8, 1904, a receipt for which payment shall be the delivery of this policy. If any subsequent premium be not paid when due, then this policy shall cease and determine subject to the nonforfeiting features hereinafter described, except that a grace of 30 days, during which time the policy remains in full force, will be allowed for the payment of any premium after the first, provided that with the payment of such premium interest is also paid thereon for the days of grace taken; but for any reckoning hereinafter named the time when a premium becomes due shall be the day stipulated therefor on the first page hereof. No premium shall be considered paid unless a receipt shall be given therefor signed by an executive officer of said com-

pany, and, if any obligation given in payment or part payment of any premium is not paid when due, this policy shall then cease and be treated as if no such obligation had been given. Conditions applicable during the first year only." The company denied liability and refused payment, hence this action.

The defense is grounded upon the allegation that "the first quarterly premium provided by said policy to be paid on or before its date, to wit, on or before the 20th day of May, 1904, was not paid, whereby said policy lapsed and became void, and the insurance thereunder ceased and determined; that said policy has never been revived or put in force by the payment of said premium, or by the payment of any subsequent premium, or otherwise, nor has the said defendant at any time waived the payment of any premium thereon, or any condition of said policy, but ever since said 20th day of May, 1904, said policy has been and remained wholly void." The reply is a general denial. The judgment of the district court was reversed by this court. *Ante,* p. 418. A rehearing was allowed. Upon reargument and further consideration of the case we are convinced that there is involved no question of waiver.

The case was tried and submitted on the part of the plaintiffs on the theory that all the premiums which had matured prior to the death of the insured had in fact been paid; and the defense, as already stated, was nonpayment of a premium and a consequent forfeiture of the policy. The principal contention of the defendant is that the evidence does not support the judgment. Zimri Dwiggins was the manager of the company in this state, and his son, Frank Dwiggins, the company's cashier at the manager's office. This office was authorized to collect premiums and issue receipts for the same. There a set of books was kept showing the condition of all policies in the state. It was the practice of the company to make out receipts at its home office for premiums about to mature on policies in force and forward the same to the

state offices for collection. The insured died November 24, 1904, and it will be observed that three premiums matured on the policy before the date of his death, one each on the 20th day of May, August, and November, 1904, on each of which the insured had 30 days grace, according to the provisions of the policy. At the time of the application the insured gave his note to the agent of the defendant, who solicited the insurance, for the first quarterly premium. The deceased appears to have been notified of the maturity of the premium due November 20, and, no response having been received from him, the state office, not being advised of his death, wrote him the following letter: "Omaha, Neb., Dec. 1, 1904. Mr. Albert R. Hanson, Malcolm, Neb. Dear Sir: We desire to call your attention to the fact that the time during which the company will permit us to accept the premium under your policy No. 343,489 will soon expire. If we receive the net amount of $21, with interest at the rate of 6 per cent. from date when due, on or before Dec. 20, 1904, but not thereafter, the insurance will be continued. Or, if you desire accomodation, we may be able to take your note for a short time, provided we receive a reply from you by return mail stating your wishes. Unless a settlement is made on or before the date mentioned above, the policy will lapse, according to its terms, and cannot be revived without your being successfully reexamined by our examiner, at your own expense, and furnishing a revival application. Your interests demand immediate attention, and we hope to hear from you by next mail. Yours truly, Z. Dwiggins, Manager." On December 5, 1904, the plaintiff, Katherine Hanson, accompanied by a son, Oscar Hanson, went to the state manager's office and paid the premium mentioned in the letter, and received the following receipt: "Aetna Life Insurance Company. M. G. Bulkley, President. J. L. English, Secretary. H. W. St. John, Actuary. C. E. Gilbert, Ass't Secretary. Hartford, Conn., Nov. 20, 1904. Received the quarter annual premium on policy No. 343,489

on the life of Albert R. Hanson continuing said policy in force for three months from date, ending at 5 o'clock P. M. on the 20th day of Feb., 1905. Premium $21. Not binding without date of payment and signature of agent here. Paid this 5th day of Dec., 1904, at Lincoln, Neb. Z. Dwiggins, Agent, Lincoln. J. L. English, Secretary. See notice to policy holder on the back of this receipt. N. C. R. P. R. 3." On the back—"Notice to the Policyholder: Policies cease in accordance with their terms if the premiums are not paid on or before the day stipulated therein for such payment, except that a grace of 30 days is allowed for the payment of any premium after the first, provided that with the payment of such premium interest is also paid thereon for the days of grace taken. Any receipt given for a premium must bear the lithographed signature of the president or secretary of the company, and the only evidence to the assured of the authority of an agent to receive a premium is the possession of such a receipt, which must also be countersigned by the agent when the premium is paid. All policies and agreements made by this company are signed by its president, vice-president, secretary, or assistant secretary. No agent, general agent, or other person, except the officers above named, can grant or extend insurance, or alter or waive any of the conditions of its policies, or make any agreement binding upon the company." At the time this premium was paid, and as a part of the same transaction, Mr. Dwiggins, the company's manager, surrendered to Mrs. Hanson the canceled note which had been given for the payment of the first premium.

There is some conflict in the evidence as to what occurred at that time, however the verdict of the jury and judgment of the court necessarily involve a finding of the facts as they are claimed by the plaintiffs. This finding must be adopted in the appellate court, and briefly stated the facts are: When Katherine Hanson and her son entered the manager's office, the cashier was at the desk. They informed him that they desired to pay the premium

due on Albert R. Hanson's policy. The manager was called from another place in the office, the amount of the premium was received, the receipt countersigned, the canceled note was taken from among papers in the office, and the note and receipt both delivered to Mrs. Hanson and her son. Mrs. Hanson thereupon informed the manager of the death of the insured, and inquired if the policy was all right. An examination of the books was made, and she was informed that it was, and she was provided with blanks for the purpose of making proof of loss. They started to depart from the building when they met an acquaintance, one Coleman, who had formerly been an employee of the defendant. He knew of Albert R. Hanson's death, and after some conversation with him they again returned to the office, where he made inquiry as to the condition of the policy, and was informed that the policy was in force. Proof of loss was made, and later the management of the state office requested the surrender of receipts for the first two premiums, which were not found. The first intimation of a disclaimer of liability on the part of the defendant came from the principal office after receipt of proof of loss.

Oscar Hanson was a witness on behalf of the plaintiffs, and on his cross-examination by counsel for defendant he was asked if he did not know that the premiums on Albert's policy had not been paid. He answered that he did not; that he heard Albert tell his father shortly before he died that the premiums were all paid. This answer was permitted to remain in the record without objection, and is, of course, some evidence of payment. On behalf of the defendant the evidence tends to prove that the receipt for the November premium was sent out from the general office by mistake, and that the books at the state office do not show payment of premiums other than the November premium, and that this payment was received and the receipt issued under a misapprehension of the facts. The books, however, were not produced in evidence, and the testimony of the manager and cashier as

to what the books disclosed is of no greater weight than their statements made after an examination of the books at the time the November premium was paid. We conclude that there was sufficient evidence to justify the submission of the case to the jury, and that the verdict and judgment should not be disturbed because of a lack of evidence.

The court instructed the jury as follows: "As to whether the premiums were paid, the jury are instructed that the receipt issued by the defendant's agent for the payment of the third premium, due under the terms of the policy November 20, 1904, would be *prima facie* evidence that all of the prior payments had been made to the defendant." It is conceded by counsel for defendant that the production of the receipt raised a presumption of payment of the prior premiums upon which a verdict might have been based in the absence of evidence explaining or contradicting the presumption, but it is said that the evidence of no prior payments is so conclusive that the presumption had no weight. In view of the conclusion already reached the objection to the instruction is not well taken.

A witness, Nootz, on behalf of the plaintiffs testified to having loaned the deceased at one time $9.50 to pay insurance. Some question is raised about the competency of this evidence. The witness, however, made no claim of knowledge as to the payment of premiums on the policy in suit, and does not testify to any claim made by the deceased of the payment of premiums. The authorities go to the extent of holding that statements of an insured person as to the payment or nonpayment of premiums on a policy of insurance covering his life, where, as in this case, the insured has no control over the policy after issuance and where the beneficiary acquires a vested interest in the policy, are incompetent and should not be received over objections, but the fact of the insured having procured money for the purpose of paying premiums is an independent fact, perhaps of little value in the absence of direct proof of payment, and we do

not regard the admission of the evidence as being at all prejudicial or erroneous.

In support of the motion for a new trial certain affidavits were filed of newly discovered evidence. They relate to statements made by the deceased that his premiums on the policy in suit had not been paid. Testimony of these statements, however, could not be received over objection, and the court did not err in overruling the motion for a new trial for that reason. One affidavit disclosed that since the trial a receipt for the August premium had been discovered among papers in possession of the defendant, and that the receipt did not show the premium paid. If this receipt had been produced at the trial it might or might not have had some weight with the jury, but we do not regard the possession of this receipt as being controlling to the extent that the judgment ought to be set aside; besides, there is no sufficient reason urged why the receipt was not produced at the trial.

There is no prejudicial error in the record, and it is recommended that our former judgment be vacated and the judgment of the district court affirmed.

CALKINS, C, concurs.

AMES, C. In view of admissions made by counsel on reargument, I concur.

By the Court: For the reasons stated in the foregoing opinion, the former judgment of this court is vacated and the judgment of the district court affirmed.

JUDGMENT ACCORDINGLY.